UNION STEAMBOAT CO. v. FITZGIBBONS.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1919. Rehearing Denied December 5, 1919.)

No. 2667.

1. ADMIRALTY ⬯34—ACTION FOR SEAMAN'S DEATH NOT BARRED BY LACHES.

Claim for death of a seaman killed by an explosion on the vessel, where action was brought, but was stayed in proceedings for limitation of liability shortly after death of the administrator plaintiff, *held* not barred by laches because of delay of several years before it was filed in the admiralty court, where a new administrator was appointed and the claim filed at once, after decision sustaining other similar claims.

2. ADMIRALTY ⬯52—JURISDICTION TO DISTRIBUTE FUND IN COURT.

Where a fund has been paid into a court of admiralty for payment of claims proved against it, the court has jurisdiction to entertain additional claims, so long as sufficient of the fund remains undistributed.

3. DEATH ⬯92—INTEREST ON CLAIM FOR DEATH NOT ALLOWABLE IN ADMIRALTY BEFORE LIQUIDATION OF CLAIM.

Interest is not allowable in admiralty on a tort claim for death of a seaman prior to liquidation of the claim, although a number of other claims, similar, except for amount of damages, were liquidated at a prior date.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in admiralty by Edward B. Fitzgibbons, administrator, against the Union Steamboat Company, owner of the steamboat Tioga. Decree for libelant, and respondent appeals. Reversed.

It appears that in July, 1890, an explosion occurred on appellant's steamboat Tioga while it was lying at the dock in Chicago. Twenty-five of the boat's crew were killed, including Edward Fitzgibbons, appellee's intestate. Suit in New York under the Illinois "Wrongful Death" statute was begun within two years by John Fitzgibbons, as administrator of deceased. In May, 1893, appellant filed in the federal court in Illinois a petition for limitation of li-

ability. Value of the boat was fixed at $111,560, for which security was given and accepted by the court. January 23, 1894, monition was ordered published, restraining certain named claimants, including John Fitzgibbons, the then administrator, from further prosecuting their suits. Before publication of the monition, the administrator, who was father of deceased, died, and administrator de bonis non was appointed in 1913.

Claims based on certain of the other deaths were filed in the District Court. They were referred to a commissioner, who on December 1, 1906, completed his report as to those claims, allowing damages thereon totaling, with certain other claims, about $60,000. On July 31, 1911, the District Court confirmed the commissioner's report in most particulars, and allowed interest on the damages from December 1, 1906, to the date of the decree. Upon appeal to this court that decree was affirmed. Union Steamboat Co. v. Chaffin's Adm'r, 204 Fed. 412, 122 C. C. A. 598. The total of these and of all claims subsequently allowed (including appellee's) and of all charges on the fund in court is well within the amount of the bond.

The claim in question was presented to the District Court shortly after the appointment of the administrator de bonis non, and was referred to a commissioner, who reported May 11, 1917, finding appellant liable and fixing appellee's damages at $2,500, but refusing interest thereon. The District Court approved the finding as to liability and damages, but awarded interest from December 1, 1906, the date on which the commissioner had completed his report with respect to the first group of claims submitted.

George N. B. Lowes and Mitchell D. Follansbee, both of Chicago, Ill., for appellant.

Samuel B. King, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] 1. Appellant insists that appellee's claim is barred by laches through failure to present it for so many years. It appears that suit was duly commenced within two years, as required by the Illinois "Wrongful Death" statute. Prosecution of that suit was prevented by the monition of 1894 issued by the District Court. The administrator died shortly thereafter, and whether or not the appointment of an administrator de bonis non would be advisable, for the purpose of further prosecuting the claim, might in large measure depend on the outcome of the other claims of the same general nature, arising out of the same accident, which were then in process of adjudication, but which, of course, were not necessarily conclusive upon this claimant. Final adjudication of those other claims was not had until 1913, when this court decided the appeal. The claim in the suit at bar was filed shortly thereafter. True, a long time had passed since the occurrence; but from the record it would appear that appellant is by far more blamable than appellee for prolonging the litigation. The proceedings to limit liability were not even begun till nearly three years after the accident, and for the inordinately long pendency of the proceedings thereunder, appellant, in the entire absence of any exculpating circumstances appearing of record, must bear its full share of responsibility, while for this delay no part of the blame attaches to appellee. Appellee's suit was begun in proper time, and for aught that appears to the contrary is still pending. The record does not show that the usual notice to claimants to present their claims was given at any time before appellee's claim was filed in the District Court. In this state of facts the claim is not barred by laches.

261 F.—49

[2] 2. It is urged that the decree of 1911 terminated the limitation proceedings, and that consequently the court had no jurisdiction in the instant case. The answer is that at least sufficient of the fund to meet this claim is still undisposed of and within the jurisdiction of the court. So long at least as any of that fund remains within its jurisdiction, it seems plain that the court may entertain claims, which, if allowed, would be payable out of that fund.

3. The contention is made that the damages awarded are manifestly grossly excessive. Deceased was 19 or 20 years old at the time he was killed and was earning about $30 per month, part of which he sent to his parents. He left surviving him his mother, who died about a year after he did, and his father, who died about three years after. There was also a brother, last known of about three years before the explosion on the Tioga. Under all these circumstances, the damages awarded are not excessive.

[3] 4. Error is assigned on the allowance of interest from date of the commissioner's report on the other claims (December 1, 1906), and in support appellant invokes the general rule that no interest is allowable on claims in tort for personal injury until they have been liquidated. Appellee maintains that allowance of interest in admiralty is discretionary with the court. Cases were cited where, if the fund deposited in the court was insufficient to pay the claims, the court, in its discretion, might require the owner who thus took the vessel, to add to the fund interest thereon, upon the theory that, having had the use of the vessel, it would be equitable to require him to pay interest on the fund. Interest on claims has been awarded, where they arose under contract or were for the value of property destroyed; but the case at bar does not fall within any of such classes, and no cases are cited, and we find none, where on claims such as this interest prior to liquidation was allowed. No reason is apparent for applying to this claim any different rule than that ordinarily prevailing in tort claims for personal injury, viz., that interest is not allowable until damages are liquidated. The Argo, 210 Fed. 872, 127 C. C. A. 456 (9 C. C. A.); Union Steamboat Co. v. Chaffin's Adm'r, 204 Fed. 412, 122 C. C. A. 598 (7 C. C. A.); Burrows v. Lownsdale, 133 Fed. 250, 66 C. C. A. 650 (9 C. C. A.).

Did the commissioner's report of December 1, 1906, upon the other claims liquidate the claim here in issue? It is readily conceivable that, notwithstanding the general similarity of all these death claims, and the likelihood that the legal rule of liability governing one would govern them all, yet even as to the question of liability, the facts concerning one or some of the decedents might be such that an entirely different rule of liability would prevail, and that as to some of the cases there might be liability and as to others not. But if it were conceded that the finding of liability in respect to the other claims determined the question of liability in this one, yet there remained unadjudicated and unliquidated the amount of damages to which the claimant is entitled. This in every case depends upon the facts of the particular case—the age and earning power of the deceased, whether he leaves next of kin, the extent to which he contributed or was liable to

contribute to their support—all matters of fact entering into the liquidating and fixing of the damages, and it cannot be said that the commissioner's finding on the other cases liquidated the damages as to this one. Surely the long delay in the presentation of this claim, while not constituting laches that will bar it, does not raise in its favor any legal or equitable right to interest because of the delay.

We conclude that the District Court did not err in fixing the damages at $2,500, but that there was error in allowing interest from December 1, 1906, and that interest at the lawful rate (5 per cent.) is allowable on the damages from the date of the commissioner's report on this claim, May 11, 1917.

The decree is reversed, with costs, with direction to the District Court to enter a decree in favor of appellee for $2,500 damages, with interest at 5 per cent. from May 11, 1917.